JOSEPH A. SCANLAN, JR., ESQ., SBN 101928
MILLER, MORTON, CAILLAT & NEVIS, LLP
25 Metro Drive, 7th Floor
San Jose, California 95110
Telephone: (408) 292-1765
Facsimile: (408) 436-8272

Attorneys for Plaintiff Robert Christensen

# UNITED STATES DISTRICT COURT

# IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

# (SAN JOSE DIVISION)

| | |
|---|---|
| ROBERT CHRISTENSEN, | Case No.: C0704789 |
| Plaintiff, | **PLAINTIFF ROBERT CHRISTENSEN'S OPPOSITION TO DEFENDANTS RULE 12(b)(6) MOTION TO DISMISS** |
| vs. | |
| | [JURY TRIAL DEMANDED] |
| PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY, a corporation, | Date: 12-21-07<br>Time: 9:00 a.m.<br>Dept.: 3 |
| Defendants. | |

MILLER, MORTON, CAILLAT & NEVIS, LLP
25 Metro Drive, 7th Floor
San Jose, CA 95110-1339

PLAINTIFF'S OPPOSITION TO RULE 12(b)(6) MOTION TO DISMISS

# TABLE OF CONTENTS

I.   INTRODUCTION AND ISSUES TO BE DECIDED ..................................................... 1

II.  STATEMENT OF FACTS ........................................................................................... 2

III. DISCUSSION ............................................................................................................... 3

   A.  Law Applicable to Motions to Dismiss for Failure to State a Claim ........................... 3

   B.  The Defendant's Motion to Dismiss is improper because Christensen has stated a valid claim under the UCL. ............................................................................................... 3

   C.  The Defendant's Motion to Dismiss is improper because there are no California cases barring UCL claims in insurance bad faith actions ............................................................ 5

   D.  Even if the Defendant's authority were applicable, that authority has been expressly limited and directly contradicted by the California Supreme Court and other lower court decisions. .................................................................................................................... 11

IV.  CONCLUSION .......................................................................................................... 14

MILLER, MORTON, CAILLAT & NEVIS, LLP
25 Metro Drive, 7th Floor
San Jose, CA 95110-1339

## TABLE OF AUTHORITIES

California Cases

*Cel-Tech Communications v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999) ........... 4, 13

*Maler v. Superior Court*, 220 Cal. App. 3d 1592, 1598 (1990).............................................. 8

*Moradi-Shalal v. Fireman's Fund Insurance Companies,* 46 Cal.3d 287 (1988).......... 6, 7, 11

*Podolsky v. First Healthcare Corp.*, 50 Cal App 4th 632 (1996) ............................................ 4

*Progressive West Insurance Co. v. Superior Court*, 135 Cal.App.4th 263, 283 (2005) ......... 13

*R&B Auto Center Inc. v. Farmers Group, Inc.*, 140 Cal.App.4th 327, 355-356 (2006)... 13, 14

*Royal Globe Ins. Co. v. Superior Court,* 23 Cal. 3d 880 (1979)................................... 6, 9, 10

*Safeco Insurance Co. v. Superior Court*, 216 Cal.App.3d 1491 (1990) ................................. 7

*State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal.App.4th 1093, 1103-1104 (1996)
  ....................................................................................................................................... 4, 9

*Stop Youth Addiction v. Lucky Stores, Inc.*, 17 Cal.4th 553, 562 (1998) ........................ 8, 9, 12

*Textron Financial Corp. v. National Union Fire Insurance*, 118 Cal.App.4th 1061, 1070
   (2004) ................................................................................................................................ 10

California Statutes

California Business & Professions Code section 17200 ...................................................... 3, 5

California Business & Professions Code section 17204 ......................................................... 9

California Insurance Code section 10144 ....................................................................... 10, 11

Federal Cases

*Chabner v. United of Omaha Life Insurance Co.*, 225 F.3d 1042, 1048 (2002) ................... 10

*Crenshaw v. Mony Life Insurance Co.*, 2004 US.Dist.Lexus 9883 (2004)............................ 14

*Hangarter v. Paul Revere Life Insurance Co.* 236 F. Supp. 2d 1069, 1106 (2002) ................ 4

*Leatherman* v. *Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163,
   164 (1993) ........................................................................................................................... 3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007) ........................... 3

MILLER, MORTON, CAILLAT & NEVIS, LLP
25 Metro Drive, 7th Floor
San Jose, CA 95110-1339

## I. INTRODUCTION AND ISSUES TO BE DECIDED

The defendant, Provident Life & Accident Insurance Company (hereinafter referred to as the "Defendant"), has moved to dismiss the third Cause of Action of plaintiff Robert Christensen's complaint (hereinafter referred to as "Christensen") This Cause of action is for unfair business practices under the California Unfair Competition Law, codified under the California Business and Professions Code, section 17200 et seq. (hereinafter referred to as the "UCL"), on the grounds that the California courts have barred such claims from being pled in First Party insurance bad faith actions. However, the Defendant has cited no case that actually supports this broad contention, and in fact no such case exists. Rather, the cases cited by the Defendant discuss the narrow question of whether a plaintiff can bring a UCL claim for unfair business practices where the complaint is solely predicated on the Unfair Insurance Practices Act, codified under the California Insurance Code, section 790 et seq. (hereinafter referred to as the "UIPA"). Nothing in the cases cited by the Defendant prohibit a plaintiff from making a claim under the UCL where the alleged unfair practice is predicated on some statutory or common law doctrine distinct from the UIPA.

Further, the Defendant's discussion of the relationship between the UCL and the UIPA is extremely unbalanced. While the cases cited by the Defendant do seem to hold that UCL claims may not be premised on violations of the UIPA, the California Supreme Court has expressly limited these holdings and reversed the reasoning behind them. Additionally, several cases have since directly contradicted the holdings of the cases, finding that a UCL claim can be predicated directly on a UIPA violation. But this is not central or even important to this court's resolution of the issues presented here because plaintiff's third cause of action is not predicated, nor directly or indirectly dependant upon the UIPA for its vitality.

For these reasons, the Defendants Motion to Dismiss Christensen's Third Cause of Action for unfair business practices under the UCL should be denied.

1

PLAINTIFF'S OPPOSITION TO RULE 12(b)(6) MOTION TO DISMISS

MILLER, MORTON, CAILLAT & NEVIS, LLP
25 Metro Drive, 7th Floor
San Jose, CA 95110-1339

## II.     STATEMENT OF FACTS

Christensen is an attorney, who practiced law in San Jose, California from 1974 until his disability, commencing in August of 2006. During the last 20 years he has held the designation of a Family Law Specialist, a designation earned through specialization and conferred by the State B Association. Christensen enjoyed a high profile career handling contested family law matters involving large marital estates and contentious custody issues. In 1989, he purchased a written insurance policy from the Defendant providing for disability income benefits in the event he became partially or totally disabled, and could no longer perform EACH of the material duties of his occupation (attorney) and EACH material duty of his specialty, family law litigation. Christensen made all of the required payments under the policy for seventeen (17) years.

In August of 2006, Christensen became disabled. At that time, Christensen promptly notified the Defendant that he was under the care of a physician and that it was his physician's determination that he could no longer continue to work due to his disability. Rather than provide the benefits for which Christensen had paid premiums for over seventeen (17) years, the Defendant engaged in a pattern of unfair and unlawful acts including: 1) failing and refusing to timely institute, conduct and complete an investigation (even as of this date, Defendant has neither approved or denied his claim for disability);  2) purporting to gather information detrimental to Christensen's claim, and failing and refusing to provide that information to him; 3) demanding documents and information from Christensen which the Defendant knew to be confidential, privileged and protected from its inquiry; 4) contending that funds received by Christensen after his disability constituted earned income, despite the knowledge that the same were not income but were the receipt of accounts receivable generated in months and years previous to his disability; 5) purporting to require Christensen to violate the attorney-client privilege in order to prove the nature of his regular duties; 6) requiring Christensen to continue to pay periodic policy premiums

2

PLAINTIFF'S OPPOSITION TO RULE 12(b)(6) MOTION TO DISMISS

to maintain the Policy in force, despite clear and unrebutted medical evidence of Christensen's total disability; and 7) willfully misrepresenting policy terms and conditions to its insured.

Each of these acts individually, and all of them cumulatively, qualify as unfair and unlawful business acts and practices under the UCL. Nowhere in Christensen's complaint is the UIPA either directly cited or indirectly relied upon to support the UCL claim.

### III.   DISCUSSION

#### A.   Law Applicable to Motions to Dismiss for Failure to State a Claim

The court must consider a complaint in its entirety when ruling on a motion to dismiss for failure to state a claim upon which relief can be granted. *See e.g. Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007). Moreover, the court must accept all factual allegations in the complaint as true. See *Leatherman* v. *Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993). Because Christensen's complaint, when read in its entirety, states a valid claim under the UCL, the Defendant's Motion to Dismiss should be denied.

#### B.   The Defendant's Motion to Dismiss is improper because Christensen has stated a valid claim under the UCL.

The Unfair Competition Law (the "UCL") was enacted as part of the California Business and Professions Code, section 17200 et seq., with the expressed intention of providing a private right of action for litigants seeking to redress wrongs caused by the unfair competition practices of California businesses. Cal Bus. & Prof. §17204. To this end, the statute defines unfair competition broadly to include any business act or practice that is either: 1) unlawful, 2) unfair, **or** 3) fraudulent. Cal Bus. & Prof. Code §17200. Thus, where a plaintiff alleges that a defendant has committed an unlawful, unfair, and/or fraudulent business act or practice, the plaintiff has stated a valid claim under the UCL.

The courts of this state have gone to great lengths to define the terms

MILLER, MORTON, CAILLAT & NEVIS, LLP
25 Metro Drive, 7th Floor
San Jose, CA 95110-1339

3

PLAINTIFF'S OPPOSITION TO RULE 12(b)(6) MOTION TO DISMISS

"unlawful", "unfair" and "fraudulent". Where a UCL claim is predicated on an "unlawful" business act or practice, the claimant must demonstrate that the defendant has violated a statutory or common law doctrine which is then independently actionable under the UCL. As the court held in *Hangarter v. Paul Revere Life Insurance Co.*: "by proscribing any unlawful business practice, (the UCL) borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Hangarter*, 236 F.Supp.2d 1069, 1106 (2002) *infra*. Moreover, where a UCL claim is predicated on a "fraudulent" business act or practice, the plaintiff need only show that the defendant engaged in fraudulent conduct that is likely to deceive the general public. A violation can be shown even if no one 1) was actually deceived, 2) relied upon the fraudulent practice, or 3) sustained any damage. *See Podolsky v. First Healthcare Corp.*, 50 Cal App 4th 632, 647-648 (1996).

UCL claims based on "unfair" business acts or practices have undergone a somewhat richer interpretive evolution than the latter two theories. For the first several decades following the statute's enactment, the courts interpreted the term "unfair" broadly to include any act or practice that was "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *See State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal.App.4th 1093, 1103-1104 (1996). However, finding this definition to be too "amorphous", the California Supreme Court limited the definition of "unfair" to any act or practice that "threatens an incipient violation of an antitrust law… or otherwise significantly threatens or harms competition." *Cel-Tech Communications v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). In this regard, the term "unfair' is now read narrowly to apply only to market unfairness, and no longer to ethical unfairness.

Because the UCL is written in the disjunctive, a UCL claim must be predicated on at least one of these three prongs (unlawful, unfair, <u>or</u> fraudulent), but need not allege all three. *Podolsky*, 50 Cal App 4th at 647. In the case at bar, Christensen has

alleged that the Defendant engaged in both "unlawful" and "fraudulent" business acts and practices. Specifically, Christensen has pled with specificity numerous acts and practices that individually (as well as cumulatively) violate the common law doctrines of fraud, misrepresentation, breach of contract and bad faith. Moreover, the complaint is clear that these acts were engaged in during the course of the Defendant's business dealings with Christensen. Because the UCL was expressly drafted to provide private litigants a forum for such breaches, the Defendant's Motion to Dismiss should be denied.

### C. The Defendant's Motion to Dismiss is improper because there are no California cases barring UCL claims in insurance bad faith actions

The Defendant's motion alleges that despite Christensen's facial compliance with the provisions of the UCL, that "the California courts have expressly found that a cause of action under B&P Code Sections 17200 *et seq*. (the UCL) cannot be pled in an insurance bad faith lawsuit." However, if the Legislature wanted to exclude insurance bad faith lawsuits from the business acts and practices actionable under the UCL, it easily could have provided as much, and it did not. Moreover, and more importantly, none of the cases cited by the Defendant support the broad contention that UCL claims cannot be pled in insurance bad faith actions. Rather, the cases discuss the narrower question of whether a violation of the Unfair Insurance Practices Act of the California Insurance Code, section 790 et seq. (the "UIPA") can be pled as a predicate "unlawful" act upon which a UCL claim may be based. Nothing in the cases cited by the Defendant prohibit a plaintiff from predicating a UCL claim on statutory or common law doctrines, distinct from the UIPA.

   1. <u>The Defendant's authority does not support the conclusions it asserts</u>

   a. The *Moradi-Shalal* case never mentions the UCL

The Defendant contends that the California Supreme Court's decision in *Moradi-Shalal v. Fireman's Fund Insurance Companies* is "the seminal case" on whether California law bars plaintiffs from alleging **UCL** claims in insurance bad

5

PLAINTIFF'S OPPOSITION TO RULE 12(b)(6) MOTION TO DISMISS

MILLER, MORTON, CAILLAT & NEVIS, LLP
25 Metro Drive, 7th Floor
San Jose, CA 95110-1339

1 faith actions. *Moradi-Shalal*, 46 Cal.3d 287 (1988). However, the *Moradi-Shalal* decision never so much as mentions the **UCL**; it exclusively addresses the application of causes of action for violations of the **UIPA**. Specifically, the case addresses the narrow question of whether the Legislature intended to confer a private right of action when it adopted the **UIPA**. In that decision, the California Supreme Court found that the Legislature's adoption of the **UIPA** was intended to provide for administrative enforcement of regulations, it was not intended to create a new cause of action for private litigants. *Id.* at 300. Because Christensen's complaint neither alleges nor relied on the **UIPA** as a source of authority, the *Moradi-Shalal* decision is entirely inapplicable to the case at bar.

Moreover, the court should take note that the *Moradi-Shalal* decision was expressly aimed at vanquishing the precedent created by the *Royal Globe Ins.* case, in which the California courts had judicial creation of a cause of action for 3rd party insurance bad faith actions. Specifically, the decision exclusively addressed whether a 3rd party to an insurance policy could sue a carrier for bad faith. This case is inapposite with that ruling, as Christensen was in direct privity with the Defendant.

> b. The *Safeco*, *Maler* and *Textron* decisions only apply to UIPA claims

While the Defendant cites several lower court decisions that seemingly apply the *Moradi-Shalal* decision to UCL claims, despite the lack of any reference to that statute in the *Moradi-Shalal* decision itself, the cases relied upon by the Defendant in this regard have each been expressly limited by the California Supreme Court's decision in *Stop Youth Addiction (infra)*. Further, even if the Supreme Court hadn't limited the holdings of these case, they are all clearly distinguishable from the case at bar.

The Defendant cites the California Court of Appeal decisions in *Safeco, Maler* and *Textron* (*infra*) to support the contention that the *Moradi-Shalal* decision has been extended to bar UCL claims in insurance bad faith actions. However, none of

these cases reach that broad conclusion. Rather, in each case the plaintiff attempts to predicate their UCL claim directly on a violation of the UIPA. Thus, these decisions turned on whether the lack of a private right of action under the UIPA as interpreted by *Moradi-Shalal*, can be overcome by the expressed private right of action authorized under the UCL. Moreover, all but one of the cases cited by the Defendant (*Textron*), were decided before the California Supreme Court had ruled on the application of the UCL's private right of action, thus the decisions were made without any guidance from the California Supreme Court.

For example, in *Safeco*, the plaintiff (a third party to the insurance contract) sued Safeco for unfair and deceptive claims settlement practices under two theories of relief: 1) a cause of action directly under the UIPA for unfair competition, and 2) a cause of action alleging that that the alleged UIPA violation constituted an unlawful and unfair practice independently actionable under the UCL. *Safeco Insurance Co. v. Superior Court*, 216 Cal.App.3d 1491. The Defendant moved to dismiss both counts on the grounds that the *Moradi-Shalal* decision barred private rights of action for UIPA violations. *Id*. at 1493. In analyzing the two theories, the court found that 1) the *Moradi-Shalal* decision affirmatively prohibited private causes of action under the UIPA, and therefore dismissed the plaintiff's first claim; and 2) because the UCL claim was predicated on the "selfsame" UIPA violations that could not be raised under the *Moradi-Shalal* decision, allowing the plaintiff to plead around this prohibition by bootstrapping the UIPA claim to the UCL would render the *Moradi-Shalal* decision meaningless. *Id* at 1494.

Similarly, in *Maler*, the plaintiff sued the defendants (several insurance companies) for unfair and deceptive claims settlement practices stemming from their denial of defense and indemnity obligations under several policies. The plaintiff alleged that these denials violated the expressed provisions of the UIPA, and were therefore unlawful and unfair practices actionable under the UCL. Citing the *Safeco* decision, the defendants moved to dismiss on the grounds that the claims were barred

7

PLAINTIFF'S OPPOSITION TO RULE 12(b)(6) MOTION TO DISMISS

by the *Moradi-Shalal* case because no private right of action existed under the UIPA and therefore the plaintiff could not create one by grafting the UCL onto the UIPA. *Maler v. Superior Court*, 220 Cal. App. 3d 1592, 1598 (1990). Again, because the UCL claim was expressly predicated on a UIPA violation, the court found that the cause of action was an "indirect attempt" to plead a UIPA violation despite *Moradi-Shalal's* ban of such private rights of action. As a direct consequence, the court held that "plaintiffs cannot circumvent that ban by bootstrapping an alleged violation of the (UIPA) onto the (UCL)." *Id.*

In the absence of Supreme Court guidance, the *Safeco* and *Maler* courts held that a plaintiff may not directly predicate a UCL claim on a UIPA violation. They do not hold that UCL claims are barred from being pled in **all** insurance bad faith actions, as the Defendant contends. Where, as here, the plaintiff's UCL claim is predicated on statutory and common law violations independent of the UIPA, the *Moradi-Shalal* decision is inapplicable, as are *Safeco* and *Maler*.

Moreover, while *Safeco* and *Maler* were decided in the absence of Supreme Court guidance, such guidance has since been provided. Subsequent to these decisions, the California Supreme Court affirmatively ruled that "we have long recognized, it is in enacting the UCL itself, and not by virtue of particular predicate statutes, that the Legislature has conferred upon private plaintiffs 'specific power.'" *Stop Youth Addiction v. Lucky Stores, Inc.*, 17 Cal.4th 553, 562 (1998). In this decision, the Supreme Court affirmatively ruled that UCL claims could be predicated on the violation of a statute that does not provide a private right of action in itself. Thus, in the wake of the *Stop Youth* decision, UCL claims can be predicated on statutes like the UIPA which do not themselves provide private rights of action.

Not surprisingly, the California Supreme Court's decision expressly limited the *Safeco* and *Maler* decisions to "stand **at most** for the proposition the UCL cannot be used to state a cause of action… [where it] would render *Moradi-Shalal* meaningless" (emphasis added). *Id.* at 566. As discussed supra, Christensen's

8

PLAINTIFF'S OPPOSITION TO RULE 12(b)(6) MOTION TO DISMISS

complaint never mentions the UIPA, and *Moradi-Shalal* never mentions the UCL. Nor is Christensen's claim an attempt to revive the right of third parties to insurance contracts to assert bad faith claims under *Royal Globe Ins. Co. v. Superior Court,* 23 Cal. 3d 880 (1979). Thus, Christensen's cause of action is in no danger of rendering *Moradi-Shalal* meaningless, and the cases cited by the Defendant are therefore inapplicable.

>  2. <u>The overlap between the common law violations predicating Christensen's UCL claim and the UIPA is not sufficient to trigger *Moradi-Shalal*.</u>

The Defendant will likely argue that although Christensen's claims may be based on breach of contract and common law doctrines of fraud, misrepresentation, and bad faith, they also violate the UIPA, and therefore the *Moradi-Shalal* decision should be extended to the claim anyway. However, not only would this application strain the reasoning of the *Moradi-Shalal* decision, it would frustrate the intent of the Legislature and directly contradict the Defendant's own authority.

When the Legislature adopted the UCL, it expressly provided a private right of action for individual litigants harmed by unfair, unlawful and fraudulent acts and practices of California businesses. Cal Bus. & Prof. Code §17204. While the court ruled in *Moradi-Shalal*, that no such private right of action was intended by the Legislature's adoption of the UIPA, in adopting the UIPA, "it is also clear that the Legislature did not in any way intend to circumscribe the previously existing common law right of an insured to seek redress for an insurers fraudulent deception or breach of the covenant of good faith" *State Farm, supra*, 45 Cal.App.4th at 1107-08.

In *Textron*, a case repeatedly cited by the Defendant, the court dismissed a plaintiff's UCL claim because it was a ham-handed attempt by a 3rd party to an insurance contract to revive *Royal Globe*. Like *Maler* and *Safeco* before it, the *Textron* court dismissed a plaintiff's UCL claim because it was predicated directly

9

PLAINTIFF'S OPPOSITION TO RULE 12(b)(6) MOTION TO DISMISS

and exclusively on a UIPA violation. *Textron Financial Corp. v. National Union Fire Insurance*, 118 Cal.App.4th 1061, 1070 (2004). However, unlike the *Maler* and *Safeco* decisions, the *Textron* court expressly acknowledged that the UCL claim could have stood if it had been predicated on the violation of a statutory or common law doctrine independent of the UIPA, even if that doctrine had overlapped with the prohibitions enumerated in the UIPA. *Id*. In *Textron*, the court found that even though a violation of the Cartwright Act is also technically a violation of the UIPA (as both statutes prohibit practices that violate anti-trust laws), a Cartwright Act violation could serve as the "unlawful" act or practice upon which a UCL claim may be predicated, notwithstanding the *Safeco* and *Maler* decisions. In essence, the court reasoned that the Legislature's failure to expressly confer a private right of action under the UIPA did not equate to retroactively barring all statutory and common law claims that happen to overlap with it.

The federal courts seem to be in agreement on this point. The Ninth Circuit Court of Appeals has recently found that even if the *Moradi-Shalal* decision prevents a plaintiff from basing a UCL claim expressly on a UIPA violation, this doctrine does not bar a plaintiff from basing a UCL claim on some statutory or common law doctrine distinct from the UIPA, even if that other doctrine regulates the same type of activity as the UIPA. *Chabner v. United of Omaha Life Insurance Co.*, 225 F.3d 1042, 1048 (2002). In that case, the plaintiff alleged that the defendant had engaged in an unfair business practice under the UCL because it had set a discriminatory premium under California Insurance Code §10144. The defendant moved to dismiss on the grounds that charging discriminatory premiums is a listed practice under the UIPA, and therefore the *Safeco* and *Maler* decisions barred the action. The court held that even if a plaintiff is prohibited from predicating a UCL claim on the charging of discriminatory premiums under the UIPA, the plaintiff's claim was expressly predicated on the charging of discriminatory premiums under §10144, not the UIPA. The fact that §10144 proscribed the same type of activities as the UIPA was not

sufficient to bring the claim within the proscriptions of *Moradi-Shalal*. *Id*.

Here, Christensen's UCL claim is based on the firmly established common law doctrines of fraud, misrepresentation, breach of contract and bad faith. These causes of action, like the Cartwright Act and §10144, predate the UIPA, and are completely distinct from it, although (like the Cartwright Act and §10144), they share some of the same elements. As such, the cases cited by the Defendant are inapplicable to this case, and the Defendant's motion to Dismiss should therefore be denied.

**D.    Even if the Defendant's authority were applicable, that authority has been expressly limited and directly contradicted by the California Supreme Court and other lower court decisions.**

Assuming *arguendo* that the Defendant's authority was applicable to the case at bar, the Defendant's motion misrepresents the state of the law on this issue. As mentioned above, the courts' reasoning in *Safeco*, *Maler* and *Textron* is directly controverted by the California Supreme Court's holding in *Stop Youth Addiction*. Moreover, numerous California decisions have indirectly contradicted the Defendant's authority by permitting UCL claims in insurance bad faith actions. In fact, several cases have gone as far as to directly contradict the *Safeco*, *Maler* and *Textron* decisions by finding that UCL claims can be predicated directly on UIPA violations. Thus, even if the Defendant's authority stood for what the Defendant claims it does, the decisions it cites and relies upon are far from the uncontroverted authority the defendant would have the court believe.

    1. <u>The California Supreme Court's holding in *Stop Youth Addiction* expressly limits the *Safeco* and *Maler* holdings.</u>

Because UCL claims are often predicated on violations of other statutes, under the "unlawful" prong of the UCL, the courts have consistently been asked to analyze the relationship between the UCL and predicate statutory violations. One prevalent issue has been whether a plaintiff can base a UCL claim on the violation of a statute that does not, in itself, provide a private right of action.

As discussed supra, the California Supreme Court resolved this issue in the affirmative in *Stop Youth Addiction, supra*, 17 Cal.4th at 556. In that case, the plaintiff, a private nonprofit corporation, filed suit against several retailers for selling cigarettes to minors in violation of California Penal Code, section 308. Because §308 does not itself confer a private right of action, the plaintiff alleged a cause of action under the UCL. Specifically, the plaintiff alleged that the defendants' violations of §308 constituted "unlawful" business practices. Not surprisingly, the defendants moved to dismiss the UCL claim on the grounds that because §308 did not provide a private right of action, the plaintiff could not plead around that fact by labeling the claim a UCL violation. The California Supreme Court found this argument unconvincing. The Court held that "neither from our discussion nor from the authorities we cite does it follow that a private plaintiff lacks standing whenever the conduct alleged to constitute unfair competition violates a statute for the direct enforcement of which there is no private right of action." *Id*. at 565.

Thus, to the extent that the *Safeco* and *Maler* decisions stood for the proposition that the UCL claims could not be predicated on UIPA violations because *Moradi-Shalal* foreclosed private rights of action for such violations, the Supreme Court's decision in *Stop Youth Addiction* directly contradicts this reasoning, holding that the lack of a private right of action under the UIPA is overcome by the private right of action provided for under the UCL. In fact, the Supreme Court stated as much in expressly limiting the *Safeco* and *Maler* decisions in the *Stop Youth Addiction* holding.

The only exception to the rule enumerated in *Stop Youth Addiction* applies where the underlying statute either 1) expressly bars application of the UCL, or 2) expressly authorizes the conduct which the plaintiff claims to be unlawful. As the California Supreme Court held in the *Cel-Tech* decision: "to forestall an action under the unfair competition law, another **provision** must actually 'bar' the action or clearly permit the conduct" (emphasis added). *Cel-Tech, supra*, 20 Cal.4th at 183. Because

PLAINTIFF'S OPPOSITION TO RULE 12(b)(6) MOTION TO DISMISS

the UIPA does not contain any expressed provisions barring private rights of action, the *Stop Youth Addiction* case clearly functions to permit private causes of action under the UCL for violations of the UIPA.

### 2. Several California decisions have indirectly permitted UCL claims in insurance bad faith actions

In several other cases reported since the *Stop Youth Addiction* decision, California courts have permitted plaintiffs to allege UCL claims in insurance bad faith actions.  See *Progressive West Insurance Co. v. Superior Court*, 135 Cal.App.4th 263, 283 (2005).  In this case, the court denied a defendant's demurrer to the plaintiff's (a first party insured's) UCL claim for insurance bad faith.  Similarly, in *R&B Auto Center Inc. v. Farmers Group, Inc.*, 140 Cal.App.4th 327, 355-356 (2006), the court held that a lower court had erred in disposing of the plaintiff's (a first-party insured) UCL claim.  R&B, 140 Cal.App.4th 327, 355-356 (2006).

### 3. Several federal court decisions have directly contradicted the *Safeco*, *Maler* and *Textron* Decisions

Several federal court decisions have also directly contradicted the *Safeco* and *Maler* holdings.  Specifically, the federal courts have been asked to analyze whether the *Moradi-Shalal* decision forecloses UCL actions predicated on UIPA violations on a number of occasions, and on each occasion have come to different conclusions than the decisions cited by the defendant.

In 2002, a Federal District Court for the Northern District of California, expressly held that the UCL "can form the basis for a private cause of action even if the predicate statute does not."  In *Hangarter*, the defendants moved to dismiss the plaintiff's UCL action on the ground that it was based directly on a UIPA violation, and was therefore barred under *Moradi-Shalal* and its progeny.  Relying on the California Supreme Court's *Stop Youth Addiction* decision, the *Hangarter* court ruled that though the UIPA does not confer a private right of action in and of itself, a UCL claim does provide a private right of action, and therefore a UCL claim can be based

on violations of UIPA. *Id*. Moreover, while the reasoning of this decision was expressly limited by the Court of Appeals review of the case, it was later affirmed in *Crenshaw v. Money Life Insurance Co.*, 2004 US.Dist.Lexus 9883 (2004).

## IV.  CONCLUSION

The Defendant's contention that the courts of this state have consistently found that UCL claims cannot be pled in insurance bad faith actions is patently incorrect. The only support for this contention cited by the Defendant is 1) a California Supreme Court decision that never so much as mentions the UCL; and 2) several lower court decisions that have been expressly limited by a subsequent California Supreme Court decision, and indirectly controverted by several lower courts.

In fact, the courts of California have never precluded UCL claims from being pled merely because the underlying action centered on the bad faith acts and practices of an insurance company. The UCL itself was explicitly enacted to provide a forum for exactly the types of activities alleged by Christensen in his complaint. The UCL neither expressly nor impliedly makes insurers immune to its provisions, nor does the *Moradi-Shalal* decision weigh in on this subject.

Christensen's complaint states a recognized Cause of Action for violation of the UCL. Therefore, the Defendants Motion to Dismiss should be denied.

Dated: November 27, 2007        MILLER, MORTON, CAILLAT & NEVIS, LLP

By: /s/ _____
    JOSEPH SCANLAN
    Attorneys for Plaintiff Robert Christensen

::ODMA\GRPWISE\MMCN_SJDOMAIN.MMCN_SJPO.NewLitigationLibrary:30109.1