1  THOMAS M. HERLIHY (SBN 83615)
   JOHN C. FERRY (SBN 104411)
2  KELLY, HERLIHY, & KLEIN LLP
   44 Montgomery Street, Suite 2500
3  San Francisco, CA  94104
   Telephone:  (415) 951-0535
4  Facsimile:    (415) 391-7808

5  Attorneys for Defendant/Counterclaimant
   PROVIDENT LIFE AND ACCIDENT
6  INSURANCE COMPANY

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                 SAN JOSE DIVISION

11

12  ROBERT H. CHRISTENSEN            )    Case No. C 07 04789
                                     )
13              Plaintiff,           )    **COUNTERCLAIM BY PROVIDENT**
                                     )    **LIFE AND ACCIDENT INSURANCE**
14        v.                         )    **COMPANY**
                                     )
15  PROVIDENT LIFE AND ACCIDENT      )
    INSURANCE COMPANY,               )
16                                   )
               Defendant.            )
17  _____ )
                                     )
18  PROVIDENT LIFE AND ACCIDENT      )
    INSURANCE COMPANY,               )
19                                   )
            Counterclaimant,         )
20                                   )
          v.                         )
21                                   )
    ROBERT H. CHRISTENSEN            )
22                                   )
            Counterdefendant.        )
23  _____ )

24

25

26

27

28

_____
        COUNTERCLAIM BY PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY
                                              Case No. C07-04789

1    Defendant Provident Life & Accident Insurance Company ("Provident") counterclaims

2  against the plaintiff Robert H. Christensen ("Mr. Christensen") pursuant to Federal Rule of Civil

3  Procedure 13 as follows:

4        1.    Provident is a corporation organized and existing under the laws of the State of

5  Tennessee, with its principal place of business in Chattanooga, Tennessee. Provident is licensed by

6  the California Department of Insurance and is authorized to conduct business throughout the State of

7  California as a disability insurer and conducts business in San Mateo County, California.

8        2.    Provident is informed and believes, and on this basis alleges, that Mr. Christensen is a

9  citizen of the State of California and a resident of Santa Clara County, California.

10       3.    Provident issued to Mr. Christensen a disability income insurance policy, number

11  335-0005003660, with a date of issue of April 1, 1989. A true and correct copy of the policy,

12  (excluding the application pages, which contain private information regarding Mr. Christensen), as

13  well as an outline of coverage, is attached as Exhibit 1. The policy is incorporated fully herein by

14  reference.

15       4.    As more fully discussed, Provident has received a claim for disability benefits by Mr.

16  Christensen under the policy. The start of the alleged disability is uncertain but the date of August 1,

17  2006 has been used as a reference date. The claim evaluation is and has been ongoing. Provident

18  has evaluated Mr. Christensen's current and pending claim for disability benefits to determine

19  whether he has been unable to perform with reasonable continuity the substantial and material acts

20  necessary to pursue his occupation in the usual and customary way and with reasonable continuity.

21  If Mr. Christensen is entitled to Total Disability benefits, the policy provides basic monthly benefits

22  in the amount of $6,760. The policy contains an initial 60 day elimination period during which time

23  no benefits are payable. Thereafter total disability benefits may be payable for life, assuming an

24  ongoing proof of an entitlement to benefits. In addition, the policy contains a provision for Residual

25  Disability benefits, a monthly benefit that can be applicable to age 65 subject to the terms of the

26  policy in the event inter alia Total Disability benefits are not payable.

27       5.    Mr. Christensen submitted a claim which Provident received on or about February 22,

28                                          -1-

1    2007.  This claim has not been paid, but Mr. Christensen is asserting that disability benefits are due

2    to him for past months, presently, and will be due to him in the future.

3         6.    Mr. Christensen has asserted and continues to assert that his disability impaired his

4    ability to work in his occupation and that there has been an effect due to his disability on his

5    earnings, e.g. incurring greater expenses as his income declined and resulting in a consequential drop

6    in net revenue.  In pursuit of his claim for benefits, Mr. Christensen on his own and with the

7    assistance of his separately engaged attorney/law firm has provided some information to Provident.

8         7.    At all relevant times, Mr. Christensen alleges that he was/is an attorney, particularly a

9    trial attorney specializing in family law and customarily engaged in a law practice described as a

10   "high profile career handling litigation of contested family law matters."  Mr. Christensen

11   maintained/maintains his legal practice as a sole practitioner in San Jose under the title "Law Offices

12   of Robert H. Christensen."

13        8.    Mr. Christensen has provided information about his alleged disabling condition(s)

14   and his treatment from some of his health care providers.  Provident has secured information

15   concerning Mr. Christensen's condition(s) from inter alia medical records of the health care

16   providers, attending physician statements, attending physician correspondence, and claim statements.

17        9.    Mr. Christensen has asserted that on the advice of his health care providers he is now

18   and has been for some prior period of time unable to perform all of the duties of a "family law

19   litigator", especially the contentious aspects of family law matters.

20        10.    Provident has attempted to evaluate the nature of Mr. Christensen's alleged

21   condition(s); the extent to which, if such condition(s) exist, it has resulted in any restrictions or

22   limitations; and, if so, whether and how such restrictions and limitations have impaired Mr.

23   Christensen's ability to work full or part time as an attorney, and/or whether and how such

24   restrictions and limitations impacted income derived from that work.  Provident further has

25   attempted to evaluate the nature of Mr. Christensen's practice; the material and substantial duties

26   thereof; the usual and customary way in which Mr. Christensen performed those duties; and, in what

27   manner of reasonable continuity these duties were performed.  In so doing Provident has attempted

28                                              -2-

1   to determine whether there has been either a total disability or a residual disability on an ongoing,

2   and monthly, basis since Mr. Christensen first asserted entitlement to benefits.

3       11.    Upon receipt of Mr. Christensen's notice of claim, Provident sent him a February 22,

4   2007 letter, outlining the claim handling process and evaluation. Similar letters were sent thereafter,

5   e.g. March 5, 2007; May 14, 2007; May 29, 2007.

6       12.    Provident has done this evaluation by contact with Mr. Christensen, Mr.

7   Christensen's attorney, Mr. Christensen's health care providers, and by availing itself of various

8   public records. With the information it acquired, Provident has attempted and still is attempting to

9   complete an analysis of Mr. Christensen's claim, to the extent that the information acquired to date

10  has allowed for that analysis.

11      13.    In the course of this ongoing investigation Mr. Christensen has complied with some,

12  but not all, of Provident's requests for information. He has modified authorizations, declined or

13  failed to produce business and/or financial information, and has not given/provided the necessary

14  details about his claim, particularly as it relates to the specifics of his occupation, including duties

15  and income. Provident needs further information. This information was and is needed to assess his

16  eligibility for to benefits, including but not limited to the presence and extent of his alleged disabling

17  condition(s); the impairing symptoms; the consequential restrictions and limitations his;

18  occupational duties; the precise nature of and frequency of his actual attorney activities;

19  income/expense information.

20      14.    However, from the information provided by Mr. Christensen it appears that:

21          •   Mr. Christensen has been able to work full time during periods when he

22              claims entitlement to total disability benefits; or

23          •   Mr. Christensen has structured his work so as to maintain his law practice

24              during those periods when he claims entitlement to total disability benefits;

25      Further, the information received to date also suggests:

26          •   The infrequency of treatment of Mr. Christensen's condition(s) presents an

27              issue as to the extent and presence of symptoms, and the impact on Mr.

28                                          -3-

1    Christensen's ability to engage in his occupation;

2    • The supporting narrative of Mr. Christensen's condition(s) and symptoms - as

3    provided by him, his attorney, his care providers - raises issues about the cause

4    of any diminution of work ability, if there was any, and the cause of any

5    income loss, if any.

6    15.    Provident maintains that there is uncertainty and an absence of proof of loss sufficient

7    to conclude that Mr. Christensen is now or has been entitled to either total or residual benefits under

8    the policy. Provident has so advised Mr. Christensen in numerous letters, care of his attorney, e.g.

9    May 29, 2007; June 6, 2007; June 29, 2007; and, August 7, 2007. But Mr. Christensen, through his

10   attorney, disagrees and has demanded in various letters from his attorney that benefits be paid for

11   past months, current, and in the future, e.g. in an April 27, 2007 letter from Mr. Christensen's

12   attorney and similar letters dated May 1, 2007; May 17, 2007; May 18, 2007; June 1, 2007; June 13,

13   2007; June 15, 2007; June 29, 2007; and, August 1, 2007.

**FIRST CLAIM OF THE COUNTERCLAIM**

**(Declaratory Relief)**

16   16.    Provident realleges and incorporates by reference paragraphs 1 through 15 above as

17   though fully set forth herein.

18   17.    Mr. Christensen argues that he has complied with all proper requests for information

19   regarding his claim and is now and has been entitled to disability benefits - total or residual - and

20   demands that Provident comply with the policy and pay his claim.

21   18.    Provident submits that Mr. Christensen has not complied with policy requirements to

22   establish a proof of loss; that his submissions to date do not substantiate a basis to pay his claim for

23   either total or residual benefits; and, that further information, not being provided to date by Mr.

24   Christensen, is necessary to establish his entitlement, if any, to benefits, total or residual; to

25   determine the period(s) for entitlement to benefits, if any; and, to explain the inconsistencies

26   concerning Mr. Christensen's claim,

27   19.    Provident alleges, on information and belief, that Mr. Christensen disputes

28   -4-

1  Provident's contentions that he has not provided all information to evaluate and decide his claim

2  and/or that he is not eligible for total disability benefits. Instead Mr. Christensen contends that his

3  claim is payable under the terms of the policy.

4      20.    By reason of the foregoing, there now exists an actual, justiciable controversy

5  between the parties. This Court is vested with the power to declare and adjudicate the rights and

6  legal obligations of the parties to this action with reference to the issues raised by this complaint.

7  Provident desires a judicial determination of the rights and obligations of each of the parties to this

8  action as specified above. A judicial determination is necessary and appropriate at this time in order

9  that each of the parties may ascertain their respective rights and duties as to each another and may

10  conduct themselves accordingly now and in the future.

11      21.    Based upon the present controversy regarding the parties' respective rights and

12  obligations under the policy, a declaratory judgment is appropriate. Provident seeks a declaratory

13  judgment to confirm that it has properly handled Mr. Christensen's claim; that Mr. Christensen is

14  not, and has not been, disabled so as to be entitled to either total or partial benefits under the policy;

15  or, alternatively, that Mr. Christensen produce, authorize or otherwise assist in providing all

16  information to establish an entitlement, if any, to any benefits, either total or residual, for whatever

17  period of time Mr. Christensen seeks benefits under the policy.

18      WHEREFORE, Provident prays for judgment on this counter-claim against Mr. Christensen

19  as follows:

20      1.    For a declaratory judgment with respect to disability benefits claimed under the

21  policy, decreeing the alternative rights and obligations of the parties as follows:

22          (a)    Provident properly handled Mr. Christensen's claim for disability benefits

23              under the policy;

24          (b)    Provident is not obligated to pay disability benefits to Mr. Christensen under

25              the policy for the claim that is in controversy as of the date of this filing;

26          (c)    Mr. Christensen's claim of disability benefits, if payable under the policy, is to

27              be established at a commencement date to be determined by the court, and

28                                          -5-

1  subject to the policy's elimination period, where Mr. Christensen has

2  submitted proof that benefits under the policy are payable;

3  (d)  Assuming an established commencement date, Mr. Christensen's ongoing

4  claim of disability benefits, if payable under the policy, is to be further

5  established as compensable under the policy by proof on an ongoing basis

6  commensurate with any period for which Mr. Christensen claims benefits

7  under the policy; and

8  (e)  Provident will be entitled to receive for all relevant periods all information

9  necessary to evaluate and decide any claim by Mr. Christensen for benefits

10  under the policy.

11  2.  For Provident's costs of suit herein; and,

12  3.  For such other and further relief as the Court may deem just and proper.

13

14  KELLY, HERLIHY, & KLEIN LLP

15

16  Dated: March 18, 2008                By _____

17                                              Thomas M. Herlihy
                                         Attorneys for Defendant/Counterclaimant
18                                        PROVIDENT LIFE & ACCIDENT
                                          INSURANCE COMPANY

19

20  E:\27212\P12

21

22

23

24

25

26

27

28                        -6-

# EXHIBIT 1

POLICY SCHEDULE (continued)

ADDITIONAL EXCLUSION(S)

In addition to the exclusions contained herein, this policy does not cover loss caused by:

*ANY INJURY TO OR DISEASE OF THE LEFT KNEE.

* This waiver applies only to increase in benefits over those provided in the original policies.

06-334-567294
06-PC-496269
06-PC-359532
06-PC-359533

_These provided $1,800 per month_

I understand that the above additional exclusion(s) is a part of the below numbered policy issued to me by Provident Life and Accident Insurance Company.

_4/6/89_

Signature of Insured

Accident Department

1330-S                    ROBERT H CHRISTENSEN 06-335-5003660                    Page 3-A

PLASP00001

DUPLICATE POLICY

PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY
CHATTANOOGA, TENNESSEE 37402

ACTIVELY AT WORK FULLTIME STATEMENT
SUPPLEMENT TO APPLICATION

I hereby make the following statement which I agree shall form a part
of my application.

   I am now actively working on a fulltime basis in my occupation
or specialty and have been continuously for the period of time
commencing 180 days prior to the date of my application.

Actively at work on a fulltime basis for purposes of this statement
shall mean "Working At Least 35 Hours a Week".

Signed at _____ San Jose _____ this 12th day Jan of _____, 1989.

_____
Signature of Witness

X _____
Signature of Proposed Insured

**DUPLICATE POLICY**

PLASP00002

PROVIDENT
LIFE AND ACCIDENT
INSURANCE COMPANY

CHATTANOOGA, TN 37402

## NOTICE OF ADVERSE UNDERWRITING DECISION

POLICY NO: 06-335-5003660      NAME: ROBERT H CHRISTENSEN

DATE: March 31, 1989

The following information regarding an adverse underwriting decision by Provident Life and Accident Insurance Company is being provided in accordance with the requirements of the Insurance Information and Privacy Protection Law in effect in your state of residence.

Your application has received careful underwriting attention and has resulted in the following underwriting decision:

THIS POLICY IS BEING ISSUED WITH AN EXCLUSION DUE TO THE HISTORY OF KNEE PROBLEMS.

If you make a written request within ninety business days of the above date you have the right to know the reasons for this decision (unless given above) and the specific items of information that support the reasons for this decision and, in most instances, the source of information. You also have certain rights concerning access to recorded personal information that we have collected and maintained in our policy files. In order to maintain the security of that information, access will be permitted only after proper identification has been submitted to us. If you would like to have access to information about you, please furnish your full name, date of birth, address, and telephone number, and direct your written request to Accident Department, Underwriting Division, Provident Life and Accident Insurance Company, Fountain Square, Chattanooga, Tennessee 37402. Within twenty-one business days after receiving your request we will contact you and arrange to inform you the nature and substance of the recorded personal information in our files. If you wish, we will arrange to have copies of our records mailed to you, or you may visit the facility where the information is located, where you will be permitted to see and copy the records in person subject to the limitations below. Also, we will tell you to whom we have disclosed items of recorded personal information within the last two years, or to whom such information would normally have been disclosed.

(Continued)

PLASP00003

DUPLICATE POLICY

There are limitations on access. We will identify sources of information which comes from institutions such as hospitals, clinics, doctors, employers or insurance support organizations, but will not identify sources of information which was obtained from individuals such as friends or neighbors. Also, we are not obligated to provide access to privileged information where we have a reasonable suspicion based on specific information that criminal action, fraud, material misrepresentation or nondisclosure exist. We will provide medically related information either directly to you or through a doctor or other medical professional, selected by you, who is licensed to provide medical care relevant to the nature of the information; except in some instances we may require authorization from the attending physician or medical professional with treatment responsibility in order to provide information directly to you. In other instances, we may choose to provide you with your investigative consumer report through the agency that prepared it.

CORRECTION OR DELETION OF INFORMATION

If, after reviewing information about you in our files, you believe that it is incorrect, you may request, in writing, that we correct, amend or delete any item of personal information. Within thirty business days after receipt of your request, we will get back in touch with you.

If we agree that certain items should be corrected, amended or deleted, we will send notification of the change to any person to whom we may have disclosed the original information during the preceding two years, and will also notify any insurance support organizations to whom we have disclosed the information or who may have furnished the original information.

If we do not agree to make the correction, amendment or deletion, you may file with us a brief statement setting forth what you believe to be correct, relevant or fair information and why you disagree with our decision not to correct, amend or delete the original information. Your statement will become a permanent part of our file and will be made part of any future disclosure of the original information. In addition, copies of your statement will be sent to any person or insurance support organization to whom the original information was disclosed.

If you have any further questions about the items just discussed, please furnish your full name, date of birth, address, and telephone number and direct your written request to Accident Department, Underwriting Division, Provident Life and Accident Insurance Company, Fountain Square, Chattanooga, Tennessee 37402.

PLASP00004

# YOUR OUTLINE OF COVERAGE

(PLEASE KEEP WITH YOUR POLICY)

## PROVIDENT
## LIFE AND ACCIDENT
### INSURANCE COMPANY

1 FOUNTAIN SQUARE
CHATTANOOGA, TN 37402

PLASP00005

OC-REV             ROBERT H CHRISTENSEN   06-335-5003660

## DUPLICATE POLICY

NOTICE


<u>READ THIS OUTLINE OF COVERAGE CAREFULLY.</u>


It is <u>not</u> identical to the outline of coverage provided upon application.  The cov-
erage originally applied for has not been issued, and/or coverage has been issued with
a different premium than that originally quoted.

PLASP00006

OC-REV                ROBERT H CHRISTENSEN· 06-335-5003660

# DUPLICATE POLICY

DISABILITY INCOME PROTECTION COVERAGE

REQUIRED OUTLINE OF COVERAGE

POLICY SERIES 335

1.  **READ YOUR POLICY CAREFULLY**

This outline of coverage provides a very brief description of the important fea-
tures of your policy. This is not the insurance contract and only the actual
policy provisions will control. The policy itself sets forth in detail the rights
and obligations of both you and your insurance company. It is, therefore, im-
portant that you READ YOUR POLICY CAREFULLY.

2.  **DISABILITY INCOME PROTECTION COVERAGE**

Policies of this category are designed to provide, to persons insured, coverage
for disabilities resulting from covered Injuries or Sickness, subject to any
limitations set forth in the policy. Coverage is not provided for basic hospital,
basic medical-surgical, or major-medical expenses.

3.  **BENEFITS**

    a.  **General Definitions**

    **Benefit Schedule** means the schedule of benefits attached to this Outline.

    **Elimination Period** means the number of days of disability that must elapse
    in a period of disability before benefits become payable. The number of days
    is shown in this Outline's Benefit Schedule. These days need not be consec-
    utive; they can be accumulated during a period of disability to satisfy an
    Elimination Period. Benefits are not payable, nor do they accrue, during an
    Elimination Period.

    **Total Disability** or **totally disabled** means that due to Injuries or Sickness:

    1.  you are not able to perform the substantial and material duties of your
        occupation; and
    2.  you are receiving care by a Physician which is appropriate for the
        condition causing the disability.

    **your occupation** means the occupation (or occupations, if more than one) in
    which you are regularly engaged at the time you became disabled. If your
    occupation is limited to a recognized specialty within the scope of your de-
    gree or license, we will deem your specialty to be your occupation.

PLASP00007

Outline of Disability Coverage for ROBERT H CHRISTENSEN 06-335-5003660

b.  **Basic Benefits of Your Policy**

The basic Monthly Benefit for Total Disability is shown in the Benefit Schedule. Benefits start on the day of Total Disability after the Elimination Period. Benefits are payable for as long as the applicable maximum benefit periods also shown in the Benefit Schedule.

UPDATE - This benefit provides for automatic increases in your Monthly Benefit for Total Disability. Refer to the Policy Schedule in your policy for details.

**Presumptive Total Disability** - You will be presumed totally disabled if Injuries or Sickness result in the entire and permanent loss of: 1) speech; 2) hearing in both ears; 3) sight of both eyes; or 4) use of both hands, both feet, or one hand and one foot.

The basic Monthly Benefit for Total Disability will be paid even if you can work. Further medical care will not be required. Benefits will be payable for life.

**Waiver of Premium** - After you have been disabled for 90 days during a period of total and/or residual disability we will:

1. refund any premiums which became due and were paid while you were totally and/or residually disabled; and
2. waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts. After it ends, to keep your policy in force, you must again pay any premiums which become due.

**Transplant Surgery** - If you are disabled because you donate a part of your body to another person, we will consider it to be the result of a Sickness.

**Cosmetic Surgery** - If you are disabled from surgery to improve your appearance or correct disfigurement, we will consider it to be the result of a Sickness.

**Pregnancy** - If you are disabled from pregnancy or childbirth, we will consider it to be the result of a Sickness.

**Rehabilitation** - You may participate in a program of occupational rehabilitation while disabled. This will not of itself affect Total Disability payments. If we approve the program we will pay certain training expenses up to an amount equal to three times one basic Monthly Benefit for Total Disability.

**Treatment of Injuries** (payable if disability benefits not paid) - If Injuries require treatment prescribed by a Physician, we will pay your expenses for such treatment, up to one-half of one Basic Monthly Benefit for Total Disability.

c.  **Additional Benefits**

The following optional benefits are also a part of your policy and are shown in the Benefit Schedule. Additional premium is required.

PLASP00008

ROBERT H CHRISTENSEN 06-335-5003660                                    Page OC-2

**Residual Disability Benefits** pay a percentage of the Total Disability Monthly Benefit when, due to Injuries or Sickness, you suffer a loss of earnings of 20% or more, and are receiving care by a physician. (During the Elimination Period only, you must not be able to work fully because of the Injuries or Sickness.) A loss of earnings over 75% is deemed a 100% loss and 100% of your Total Disability Monthly Benefit will be paid. Residual benefits are payable for as long as stated in the policy.

When a disability lasts more than one year, Cost of Living indexing (based on the Consumer Price Index) will be applied to your pre-disability earnings. As they increase, your loss of earnings becomes greater and this, in turn, produces increases in your Residual Disability Monthly Benefit.

**Recovery Benefits** are payable for up to three months following a period for which benefits were paid if you are under age 65 and return to full-time work with a loss of earnings of at least 20%. Benefits will be the greater of the Residual formula amount for each of the first three months or the applicable percentage (100% first month, 75% second month and 50% third month) of the actual claim payment made for the 30 days prior to your return to work.

**Cost of Living Adjustments with Guaranteed Percentage Increase Option** provide, if a period of disability lasts for more than one year, annual simple interest COLA increases in the Total Disability Monthly Benefit based on changes in the Consumer Price Index (CPI). The COLA adjustment selected is shown in the Benefit Schedule.

The COLA has no cap (other than age 65) and there is a floor of 4%. If the CPI goes down during a claim, the benefit can decrease, but can never be less than its original amount at the start of disability increased by 4% of such original amount for each full year of disability. The COLA benefit continues until the earlier of when the benefit period ends or you reach age 65.

A Guaranteed Percentage Increase Option is included if the COLA percentage is less than 12%. It allows you to increase the COLA percentage by the Available GPI without submitting evidence of physical or financial insurability. Increases can be made in 2% increments on the option dates specified in your policy. At the end of a claim during which cost of living adjustments were made, you may (if under age 60) increase the basic Total Disability Monthly Benefit to the adjusted amount which was used to determine the last monthly claim payment.

PLASP00009

ROBERT H CHRISTENSEN 06-335-5003660

4. **EXCLUSIONS**

This policy does not cover loss caused by war or act of war.

The policy will only cover pre-existing conditions as follows:

1. During the first two policy years, a pre-existing condition will be covered if it was disclosed and not misrepresented in answer to a question in the application for the policy, and we did not exclude it from coverage.
2. We will cover any condition not excluded by the policy for a disability that starts after two years.

Pre-existing conditions are defined in the policy.

If there are any additional exclusions, they will be referred to in the Policy Schedule. If there is an exclusion or limitation which applies only to a benefit rider added after the policy is issued, it will be included with the rider.

5. **RENEWABILITY OF YOUR POLICY**

**Non-Cancellable and Guaranteed Continuable to Age 65 at Guaranteed Premiums:** You can continue this policy to age 65 by paying the premiums on time.

**Conditional Right to Renew After Age 65; Premiums are not Guaranteed:** You can renew this policy as long as you are actively and gainfully working full time; there is no age limit. You must pay premiums on time at our rates then in effect at time of renewal. The basic policy, if renewed before age 75, will provide a 24 month maximum benefit period for Total Disability and Presumptive Total Disability. A 12 month maximum benefit period will be provided if the policy is renewed at or after age 75.

If the policy is continued, all of the basic benefit provisions will be included in the continued policy. Any additional benefit provision contained in the policy will not be included unless it is so named as one that will be included in the continued policy.

PLASP00010

335-OC-CA

ROBERT H CHRISTENSEN 06-335-5003660

## BENEFIT SCHEDULE FOR THIS OUTLINE

-----------------------------------------------------------------------------

Elimination Period                    60 days of Total and/or Residual Disability

Monthly Benefit for Total Disability                              $4,800.00

Maximum Benefit Periods:

Injuries:
    Total Disability starting before age 65 ............................. for Life
    Total Disability starting at age 65 but before age 75 ............. 24 months
    Total Disability starting at or after age 75 ...................... 12 months

Sickness:
    Total Disability starting before age 60 ......................... for Life
    Total Disability starting at age 60 but before age 61 ............. to age 65
    Total Disability starting at age 61 but before age 62 ............. 48 months
    Total Disability starting at age 62 but before age 63 ............. 42 months
    Total Disability starting at age 63 but before age 64 ............. 36 months
    Total Disability starting at age 64 but before age 65 ............. 30 months
    Total Disability starting at age 65 but before age 75 ............. 24 months
    Total Disability starting at or after age 75 ...................... 12 months

-------------------------------PREMIUMS----------------------------------

Policy Premium - $2,630.07(Annually) This includes a basic policy premium of $1,836.24

Other Premium Paying Methods:
    $1,341.33 Semi-Annually
      $683.81 Quarterly
      $223.57 Monthly (Preauthorized Bank Draft only)

The policy premium will increase with each UPDATE Increase in benefits.  Refer to the
Policy Schedule in your policy for details.

If this policy is continued past your 65th birthday, renewal premiums will be those
in effect at time of renewals.

Grace Period.  You will have 31 days after the due date to pay any premiums other than
the first.  Your policy will stay in force during the grace period.

-------------------------------ADDITIONAL BENEFITS-----------------------------------
        (The premium shown for an Option is included in the Policy Premium)


                                                            Premium $465.37

Residual Disability Benefit


                    (Benefit Schedule is continued on next page.)



Insured - ROBERT H CHRISTENSEN                    Policy Number 5003660

BENEFIT SCHEDULE (continued)


Cost of Living Adjustments with Guaranteed Percentage Increase Option

| | | |
|---|---|---|
| Maximum COLA Percentage | 4% | Premium $254.74 |
| Available GPI | 8% | Premium $73.72 |
| | | Total COLA/GPI    Premium $328.46 |


PLASP00012


This Outline of Coverage was prepared on 08/10/2007 and replaces any previous description of coverage furnished you.


Insured - ROBERT H CHRISTENSEN

Policy Number 5003660

Insured – ROBERT H CHRISTENSEN

Policy Number 5003660

PLASP00013

**UNUMPROVIDENT.**

UnumProvident Corporation
1 Fountain Square, Chattanooga, TN 37402
423.755.1011

# DUPLICATE POLICY

*Corporate Secretary*

*President*

In this policy, the words "you" and "your" mean you, the Insured named below; "we," "our" and "us" mean Provident Life and Accident Insurance Company.

We will pay benefits for covered loss resulting from Injuries or Sickness subject to all of the provisions of this policy. Loss must begin while the policy is in force.

This policy is a legal contract between you and us. It is issued in consideration of the payment in advance of the required premium and of your statements and representations in the application. A copy of your application is attached and made a part of the policy.

**NON-CANCELLABLE AND GUARANTEED CONTINUABLE TO AGE 65 AT GUARANTEED PREMIUMS:** You can continue this policy to age 65 by paying premiums on time. The premiums shown in the Policy Schedule on Page 3 are guaranteed to age 65.

**CONDITIONAL RIGHT TO RENEW AFTER AGE 65; PREMIUMS ARE NOT GUARANTEED:** You can renew this policy as long as you are actively and gainfully working full time; there is no age limit. You must pay premiums on time at our premium rates then in effect at time of renewals. (For further conditions, see the page titled "Premiums and Renewals." See Page 7 for the benefit provisions that will be included in the continued policy.)

## D I S A B I L I T Y   I N C O M E   P O L I C Y

**ROBERT H CHRISTENSEN, the Insured**
**Policy Number 06-335-5003660**

### THIS POLICY IS A REWRITE FROM OTHER COVERAGE -- SEE PAGE 3

### SEE ADDITIONAL EXCLUSION(S) ON PAGE 3-A

**10 day right to examine your policy** - We want you to fully understand and be entirely satisfied with your policy. If you are not satisfied for any reason, you may return the policy to us, or to the agent through whom it was purchased, within 10 days of its receipt. We will refund any premiums you have paid within 10 days after we receive your notice of cancellation and the policy. It will be considered never to have been issued.

PLASP00014

335

In this policy, the words "you" and "your" mean you, the Insured named below; "we," "our" and "us" mean Provident Life and Accident Insurance Company.

We will pay benefits for covered loss resulting from Injuries or Sickness subject to all of the provisions of this policy. Loss must begin while the policy is in force.

This policy is a legal contract between you and us. It is issued in consideration of the payment in advance of the required premium and of your statements and representations in the application. A copy of your application is attached and made a part of the policy.

**NON-CANCELLABLE AND GUARANTEED CONTINUABLE TO AGE 65 AT GUARANTEED PREMIUMS:** You can continue this policy to age 65 by paying premiums on time. The premiums shown in the Policy Schedule on Page 3 are guaranteed to age 65.

**CONDITIONAL RIGHT TO RENEW AFTER AGE 65; PREMIUMS ARE NOT GUARANTEED:** You can renew this policy as long as you are actively and gainfully working full time; there is no age limit. You must pay premiums on time at our premium rates then in effect at time of renewals. (For further conditions, see the page titled "Premiums and Renewals." See Page 7 for the benefit provisions that will be included in the continued policy.)

### D I S A B I L I T Y   I N C O M E   P O L I C Y

ROBERT H CHRISTENSEN, the Insured
Policy Number 06-335-5003660

THIS POLICY IS A REWRITE FROM OTHER COVERAGE -- SEE PAGE 3

SEE ADDITIONAL EXCLUSION(S) ON PAGE 3-A

**10 day right to examine your policy** - We want you to fully understand and be entirely satisfied with your policy. If you are not satisfied for any reason, you may return the policy to us, or to the agent through whom it was purchased, within 10 days of its receipt. We will refund any premiums you have paid within 10 days after we receive your notice of cancellation and the policy. It will be considered never to have been issued.

PLASP00015

335

## GUIDE TO POLICY PROVISIONS

| | Page |
|---|---|
| | 1 |
| Renewal Conditions | 3 |
| Policy Schedule | 3 |
| UPDATE | |
| Definitions (Injuries, Sickness, age, Physician, Total Disability, | 4 |
| your occupation, period of disability, Elimination Period) | 5 |
| Exclusion | 5 |
| Pre-existing Condition Limitation | 5 |
| Benefits | 5 |
| Total Disability | 5 |
| Presumptive Total Disability | 6 |
| Transplant Surgery | 6 |
| Cosmetic Surgery | 6 |
| Pregnancy | 6 |
| Waiver of Premium | 6 |
| Rehabilitation | 7 |
| Treatment of Injuries (Payable if disability benefits not paid) | 7 |
| Benefits When Policy Renewed After Age 65 | 7 |
| Payment for Part of Month | |
| Additional Benefits | |
| Residual Disability (includes revised Waiver of Premium provision) | 8 |
| Cost of Living Adjustment | 12 |
| Premiums and Renewals | 15 |
| Policy Term | 15 |
| Grace Period | 15 |
| Conditional Right to Renew After Age 65; Premiums Are Not Guaranteed | 15 |
| Reinstatement | 16 |
| Suspension During Military Service | 16 |
| Premium Adjustment at Death | |
| Claims | 16 |
| Notice of Claim | 16 |
| Claim Forms | 16 |
| Proof of Loss | 17 |
| Time of Payment of Claims | 17 |
| Payment of Claims | 17 |
| Physical Examinations | 17 |
| Misstatement of Age | 17 |
| Legal Actions | |
| General Provisions | 17 |
| Entire Contract | 17 |
| Incontestable | 17 |
| Conformity With State Statutes | 17 |
| Assignment | 18 |
| Premium Payment Rider | |

READ YOUR POLICY CAREFULLY

PLASP00016

POLICY SCHEDULE

Insured - ROBERT H CHRISTENSEN
Effective Date - April 1, 1989
Issue Date - March 31, 1989

Policy Number - 06-335-5003660
First Renewal Date - May 1, 1989
Renewal Term - Twelve Months

Annual Policy Premium payable from April 1, 1989 until the first UPDATE Increase Date
(see Page 3 (cont.)) is $2,630.07 on a non smoking premium basis.


Other Premium Paying Methods:
  $1,341.33 Semi-Annually
    $683.81 Quarterly
    $223.57 Monthly (Preauthorized Bank Draft only)

-----------------------MONTHLY BENEFIT FOR TOTAL DISABILITY------------------------

$4,800.00

-----------------------------ELIMINATION PERIOD--------------------------------

60 days of Total and/or Residual Disability

An Elimination Period starting after age 65
must consist entirely of days of Total Disability

--------------------------MAXIMUM BENEFIT PERIODS-----------------------------

Injuries:
    Total Disability starting before age 65  ............................    for Life
    Total Disability starting at age 65 but before age 75  ..............    24 months
    Total Disability starting at or after age 75  .......................    12 months

Sickness:
    Total Disability starting before age 60  ............................    for Life
    Total Disability starting at age 60 but before age 61  ..............    to age 65
    Total Disability starting at age 61 but before age 62  ..............    48 months
    Total Disability starting at age 62 but before age 63  ..............    42 months
    Total Disability starting at age 63 but before age 64  ..............    36 months
    Total Disability starting at age 64 but before age 65  ..............    30 months
    Total Disability starting at age 65 but before age 75  ..............    24 months
    Total Disability starting at or after age 75  .......................    12 months

------------------------------------------------------------------------------
Rehabilitation Expense  ..................................  $14,400.00 Maximum Amount

Treatment of Injuries (Payable if disability
    benefits not paid)  ..................................  $2,400.00 Maximum Amount

-----------------------------ADDITIONAL BENEFITS------------------------------
(The premium shown for each benefit is included in the Policy Premium shown above.)


(Policy Schedule is continued on next page.)

PLASP00017

POLICY SCHEDULE (continued)


Residual Disability Benefit ..............................Page 8    Premium $465.37

Cost of Living Adjustments (COLA) with Guaranteed
Percentage Increase (GPI) Option ........................Page 12

      Maximum COLA Percentage          4%         Premium $254.74
      Available GPI                    8%         Premium $73.72
                                           Total COLA/GPI    Premium $328.46

---------------------------------------------------------------------------


THIS POLICY IS ISSUED IN LIEU OF AND REPLACES:

      POLICY NO. 06-334-567294 DATED April 13, 1983
      POLICY NO. 06-PC-496269 DATED October 28, 1981
      POLICY NO. 06-PC-359532 DATED January 2, 1979
      POLICY NO. 06-PC-359533 DATED January 2, 1979


The Pre-existing Condition Limitation and Incontestable provisions in this policy are
waived up to the extent of that which was earned for the same benefits provided by
the policies it replaced.

PLASP00018


(Policy Schedule is continued on next page.)


335(L-L60)         ROBERT H CHRISTENSEN 06-335-5003660         Page 3(cont.)

**POLICY SCHEDULE (continued)**

------------------------------------------------UPDATE----------------------------------------------------

The benefits and premium named below will be automatically increased without evidence of insurability, as follows:

| UPDATE Increase Date | New Monthly Benefit for Total Disability | New Maximum Amount for Rehabilitation Expense | New Maximum Amount for Treatment of Injuries | New Annual Premium for this Policy |
|---|---|---|---|---|
| 4/01/90 | $5,140.00 | $15,420.00 | $2,570.00 | $2,866.26 |
| 4/01/91 | $5,500.00 | $16,500.00 | $2,750.00 | $3,128.95 |
| 4/01/92 | $5,890.00 | $17,670.00 | $2,945.00 | $3,427.19 |
| 4/01/93 | $6,310.00 | $18,930.00 | $3,155.00 | $3,763.06 |
| 4/01/94 | $6,760.00 | $20,280.00 | $3,380.00 | $4,138.69 |

UPDATE Benefit increases are effective on the UPDATE Increase Dates shown. If an UPDATE Increase Date shown does not coincide with a renewal date for this policy, the increase will be effective on the next renewal date.

An UPDATE Benefit increase will apply only to a period of disability which starts after the effective date of the increase. It must qualify as a separate period of disability. If the premium for the policy is being waived on the effective date of the increase, the premium for the increase will also be waived. When you resume paying premiums for the policy, you must also start paying the premium for the increase.

You are entitled to UPDATE Benefit increases on the dates shown above. If you do not accept an increase, your refusal:

1.  forfeits your right on that UPDATE Increase Date to the UPDATE Benefit increase;
2.  postpones the schedule of benefit increases to the next UPDATE Increase Date, if any;
3.  adjusts the premiums for the remaining increases, if any, since such premiums are based on your attained age at the time of an UPDATE Benefit increase; and
4.  in no way extends the last UPDATE Increase Date shown above.

Each refusal of an UPDATE Benefit increase reduces the number of UPDATE Benefit increases to which you were entitled by one.

If you are under age 59 on the last UPDATE Increase Date, you may apply for an amendment providing additional UPDATE Benefit increases. You can do this by making formal application within the period of 60 days prior to and 31 days after the last UPDATE Increase Date. Approval will be subject to our underwriting guidelines then in effect.

**(Policy Schedule is continued on next page.)**

PLASP00019

POLICY SCHEDULE (continued)

ADDITIONAL EXCLUSION(S)

In addition to the exclusions contained herein, this policy does not cover loss caused by:

*ANY INJURY TO OR DISEASE OF THE LEFT KNEE.

* This waiver applies only to increase in benefits over those provided in the original policies.

06-334-567294
06-PC-496269
06-PC-359532
06-PC-359533

I understand that the above additional exclusion(s) is a part of the below numbered policy issued to me by Provident Life and Accident Insurance Company.

_____
Signature of Insured

PLASP00020

1330-S          ROBERT H CHRISTENSEN 06-335-5003660          Page 3-A

## DEFINITIONS

**Injuries** means accidental bodily injuries occurring while your policy is in force.

**Sickness** means sickness or disease which is first manifested while your policy is in force.

**age**, when used before a number, such as in "age 65", means the ending date of the policy term in which you attain that age. A policy term is described on the page titled "Premiums and Renewals."

**Physician** means any person other than you who is licensed by law, and is acting within the scope of the license, to treat Injuries or Sickness which results in covered loss.

**Total Disability** or **totally disabled** means that due to Injuries or Sickness:

1. you are not able to perform the substantial and material duties of your occupation; and

2. you are receiving care by a Physician which is appropriate for the condition causing the disability.

**your occupation** means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled. If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty to be your occupation.

**period of disability** means a period of disability starting while this policy is in force. Successive periods will be deemed to be the same period unless the later period:

1. is due to a different or unrelated cause, or

2. starts more than twelve months after the end of the previous period;

in which event, the later period will be a new or separate period of disability. A new Elimination Period must then be met. And, a new Maximum Benefit Period will apply.

**Elimination Period** means the number of days of disability that must elapse in a period of disability before benefits become payable. The number of days is shown on Page 3. These days need not be consecutive; they can be accumulated during a period of disability to satisfy an Elimination Period. Benefits are not payable, nor do they accrue, during an Elimination Period.

PLASP00021

## EXCLUSION

We will not pay benefits for loss caused by war or any act of war, whether war is declared or not.

Additional exclusions, if any, appear in the Policy Schedule.

## PRE-EXISTING CONDITION LIMITATION

We will not pay benefits for loss starting within two years of the Effective Date of this policy which is caused by a Pre-existing Condition. A claim for benefits for loss starting thereafter will not be reduced or denied on the ground it is caused by a Pre-existing Condition unless the condition is excluded by name or specific description. Pre-existing Condition means a physical impairment, deformity or a medical condition that was not disclosed, or that was misrepresented, in answer to a question in the application for this policy. A medical condition means a sickness or physical condition which either: 1) resulted in your receiving medical advice or treatment; or 2) caused symptoms for which an ordinarily prudent person would seek medical advice or treatment.

## BENEFITS

TOTAL DISABILITY
We will pay the Monthly Benefit for Total Disability shown on Page 3 as follows:

1. Benefits start on the day of Total Disability following the Elimination Period.
2. Benefits will continue while you are totally disabled during the period of disability but not beyond the Maximum Benefit Period.

In no event will you be considered to have more than one disability at the same time. The fact that a disability is caused by more than one Injury or Sickness or from both will not matter. We will pay benefits for the disability which provides the greater benefit.

PRESUMPTIVE TOTAL DISABILITY - LOSS OF SPEECH, HEARING, SIGHT OR THE USE OF TWO LIMBS
You will be presumed totally disabled if Injuries or Sickness results in the entire and permanent loss of:

1. speech;
2. hearing in both ears;
3. the sight of both eyes; or
4. the use of both hands, or of both feet or of one hand and one foot.

You must present satisfactory proof of your loss. Your ability to work will not matter. Further medical care will not be required. Benefits will be paid according to the Total Disability provisions of this policy. But, benefits will start on the date of loss if earlier than the day benefits start as shown on Page 3. If loss occurs before you attain age 65, the Monthly Benefit for Total Disability will be paid as long as you live regardless of the Maximum Benefit Period shown on Page 3.

PLASP00022

**TRANSPLANT SURGERY**
You might be disabled from the transplant of part of your body to another person. If so, we will consider it to be the result of a Sickness.

**COSMETIC SURGERY**
You might be disabled from surgery to improve your appearance or to correct disfigurement. If so, we will consider it to be the result of a Sickness.

**PREGNANCY**
You might be disabled from pregnancy or childbirth. If so, we will consider it to be the result of a Sickness.

**WAIVER OF PREMIUM**
After you have been totally disabled for 90 days during a period of disability, we will:

1. refund any premiums which became due and were paid while you were totally disabled; and
2. waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts. After it ends, to keep this policy in force, you must again pay any premiums which become due.

For premiums to be waived, you must give us satisfactory proof of disability.

**REHABILITATION**
Total Disability - Your participation in a program of occupational rehabilitation will not of itself be considered a recovery from Total Disability.

Expense - If, during a period of Total Disability, you participate in a program of occupational rehabilitation which we approve, we will pay for certain expenses you incur. That is, we will pay for the reasonable cost of training and education which is not otherwise covered under health care insurance, workers' compensation or any public fund or program. But, we will not pay more than the Maximum Amount for Rehabilitation Expense shown on Page 3.

A program of occupational rehabilitation must be designed to help you return to work and be:

1. a formal program of rehabilitation at an accredited graduate school, college or business school, or at a licensed vocational school;
2. a recognized program operated by the federal or a state government; or
3. any other professionally planned rehabilitation program of training or education.

PLASP00023

**TREATMENT OF INJURIES (PAYABLE IF DISABILITY BENEFITS NOT PAID.)**
If Injuries require medical treatment prescribed by a Physician, we will pay your expenses for the treatment. But, we will not pay more than the Maximum Amount for Treatment of Injuries shown on Page 3 as a result of any one accident.

If you qualify for payment under this provision and also under a disability provision of this policy because of the same accident, payment will be made under the provision which provides the greater benefit.

**BENEFITS WHEN POLICY RENEWED AFTER AGE 65**
If this policy is continued in accordance with the "Conditional Right to Renew After Age 65" on Page 1, all of the benefit provisions on Pages 5, 6 and 7 will be included in the continued policy. (Any additional benefit provision contained in this policy will not be included unless it is named on Page 3 as one that will be included in the continued policy.) The Maximum Benefit Period starting while this policy is so continued is shown on Page 3. The Monthly Benefit for Total Disability will not change unless you choose to renew with a lesser amount.

**PAYMENT FOR PART OF MONTH**
If any payment under this policy is for part of a month, the daily rate will be 1/30th of the payment which would have been made if disability had continued for the whole month.

PLASP00024

**RESIDUAL DISABILITY BENEFITS**
with Recovery Benefits and with Cost of Living Indexing of Prior Monthly Income
(Nothing in this provision limits the policy definition of "Total Disability.")

## DEFINITIONS

**Monthly Income** means your monthly income from salary, wages, bonuses, commissions, fees or other payments for services which you render or your business provides. Normal and usual business expenses are to be deducted; income taxes are not. Monthly Income must be earned. It does not include dividends, interest, rents, royalties, annuities, sick pay or benefits received for disability under a formal wage or salary continuation plan or other forms of unearned income.

Monthly Income can be credited to the period in which it is actually received or to the period in which it is earned. We allow either the cash or accrual accounting method. But, the same method must be used to determine the Prior Monthly Income and the Current Monthly Income during a period of disability. If you elect the cash accounting method, we will not include income received for services rendered prior to the start of a period of disability in your Current Monthly Income.

**Prior Monthly Income** means the greatest of:

1. your average Monthly Income for the 12 months just prior to the start of the period of disability for which claim is made;
2. your average Monthly Income for the year with the highest earnings of the last two years prior to the start of such period of disability; or
3. your highest average Monthly Income for any two successive years of the last five years prior to the start of such period of disability.

**Current Monthly Income** means your Monthly Income in your occupation for each month of Residual Disability being claimed.

**Loss of Monthly Income** means the difference between Prior Monthly Income and Current Monthly Income. Loss of Monthly Income must be caused by the Residual Disability for which claim is made. The amount of the loss must be at least 20% of Prior Monthly Income to be deemed Loss of Monthly Income. If your loss is more than 75% of Prior Monthly Income, we will deem the loss to be 100%.

**Residual Disability or residually disabled**, during the Elimination Period, means that due to Injuries or Sickness:

1. you are not able to do one or more of your substantial and material daily business duties or you are not able to do your usual daily business duties for as much time as it would normally take you to do them;
2. you have a Loss of Monthly Income in your occupation of at least 20%; and
3. you are receiving care by a Physician which is appropriate for the condition causing disability.

After the Elimination Period has been satisfied, you are no longer required to have a loss of duties or time. **Residual Disability or residually disabled** then means that as a result of the same Injuries or Sickness:

1. you have a Loss of Monthly Income in your occupation of at least 20%; and
2. you are receiving care by a Physician which is appropriate for the condition causing the Loss of Monthly Income.

PLASP00025

335-RS                    ROBERT H CHRISTENSEN 06-335-5003660                    Page 8

**Monthly Benefit for Total Disability** is shown on Page 3.  (It can be increased by certain other benefit provisions if they are included in your policy and are applicable. If included, they are titled "Cost of Living Adjustments of Monthly Benefits" and "Social Insurance Substitute Benefit.")

**Residual Disability Monthly Benefit** is the benefit payable under this provision.  It is determined monthly by this formula.  Each month, it equals:

$$\frac{\text{Loss of Monthly Income}}{\text{Prior Monthly Income}} \times \text{Monthly Benefit for Total Disability}$$

### RESIDUAL DISABILITY BENEFITS

We will pay Residual Disability Monthly Benefits as follows:

1.  Benefits start on the day of Residual Disability following the Elimination Period or, if later, after the end of compensable Total Disability during the same period of disability.
2.  Benefits will continue while you are residually disabled during a period of disability but the combined period for which benefits for Total and Residual Disability are payable can not exceed the Maximum Benefit Period. And, benefits will not be payable after you attain age 65.
3.  The first six monthly payments for Residual Disability will be the greater of:
    a.  50% of the Monthly Benefit for Total Disability; or
    b.  the Residual Disability Monthly Benefit determined for each month.

Residual Disability benefits will not be paid for any days for which Total Disability benefits are paid.

In no event will you be considered to have more than one disability at the same time. The fact that a disability is caused by more than one Injury or Sickness or from both will not matter.  We will pay benefits for the disability which provides the greater benefit.

We can require any proof which we consider necessary to determine your Current Monthly Income and Prior Monthly Income.  Also, we or an independent accountant retained by us shall have the right to examine your financial records as often as we may reasonably require.

### RECOVERY BENEFITS

(Nothing in this provision limits the policy definition of "Residual Disability.")

If you are under age 65 and return to gainful full-time work at the end of a period for which we have paid Total and/or Residual Disability benefits, we will:

1.  while you are so engaged in gainful full-time work; and
2.  while you are having a Loss of Monthly Income in your occupation of at least 20% due to the same Injuries or Sickness;

PLASP00026

pay benefits under this back to work provision as though the same period of disability is continuing. You do not have to be receiving care by a Physician while Recovery Benefits are being paid. Payments will be made for each month, up to 3 months, in which (1) and (2) exist. For the first such month, we will pay a benefit based on the greater of:

  a. the monthly rate computed by the Residual Disability Benefit formula for that month; or
  b. 100% of the actual claim payment made for the 30 days preceding your return to work full time.

The monthly benefit for the second and third months will be computed as in (a) and (b) above; except that, instead of using 100% in (b), 75% will apply for the second month. And, 50% will apply for the third month.

These recovery benefits will not be paid for any days for which Total and/or Residual Disability benefits are paid. And, they will not be paid for more than 3 months in connection with a period of disability.

### COST OF LIVING INDEXING OF PRIOR MONTHLY INCOME
### (Applicable to benefits paid after the 12th month of a period of disability)

#### Definitions

CPI-U means the Consumer Price Index for All Urban Consumers. It is published by the United States Department of Labor. If the CPI-U is discontinued or if its method of computation is changed, we may use another nationally published index. We will choose an index which is similar in scope and purpose to the CPI-U. The CPI-U will then mean the index which is chosen.

Review Date means each anniversary date of the start of a period of disability.

Review Period means a one year period ending on a Review Date.

Index Month means the calendar month three months prior to a Review Date. But, the first Index Month means the calendar month three months prior to the start of a period of disability. We will measure all changes in the CPI-U from the first Index Month.

Index Factor is used by us to determine your adjusted Prior Monthly Income for each Review Period. We will compute this factor by dividing the CPI-U for the latest Index Month by the CPI-U for the first Index Month. We will compute it on each Review Date during a period of disability.

#### Adjusted Prior Monthly Income

If Injuries or Sickness results in a period of disability that lasts at least 12 months, we will compute Cost of Living Adjustments on each Review Date for Residual Disability Benefits. Monthly benefits which thereafter accrue during that period of disability will be adjusted by indexing your Prior Monthly Income as follows:

PLASP00027

1. On each Review Date, your Prior Monthly Income will be multiplied by your Index
Factor. The result is your adjusted Prior Monthly Income. It will be used to
figure your Loss of Monthly Income during the Review Period that follows. It
will also be used in the formula to compute each Residual Disability Monthly
Benefit payable during that Review Period.

An increase in your Prior Monthly Income can cause your Loss of Monthly Income
to be greater. This in turn can result in an increase in your Residual Disa-
bility Monthly Benefit. Other than your Index Factor (which is computed by
using actual CPI-U values), there is no limit on the percent of increase in your
Prior Monthly Income for a Review Period. If the CPI-U should go down, your
adjusted Prior Monthly Income can decrease. But, it can never reduce below your
Prior Monthly Income at the start of the period of disability.

2. Indexing of your Prior Monthly Income will end on the earliest of:

   a. the end of the period of disability (see Page 4);
   b. the end of a benefit period; or
   c. the date you attain age 65.

If the computations end because of a or b above, disability benefits which can be paid
for the first 12 months of a new period of disability will not include a Cost of Living
Adjustment. A new first Index Month and Review Date will apply to each new period
of disability that lasts more than 12 months.

## WAIVER OF PREMIUM

For periods of disability which start before age 65, the Waiver of Premium provision
on Page 6 is replaced by the following:

### "WAIVER OF PREMIUM - TOTAL DISABILITY AND RESIDUAL DISABILITY

If, during a period of disability, Injuries or Sickness results in more than 90 days
of Total and/or Residual Disability, we will:

1. refund any premiums which became due and were paid while you were so disabled;
   and
2. waive the payment of each premium which thereafter becomes due for as long as
   the period of disability lasts. After it ends, to keep your policy in force,
   you must again pay any premiums which become due.

For premiums to be waived, you must give us satisfactory proof of disability except
as respects Recovery Benefits."

NOTE: All portions of this Residual Disability Benefit expire when you attain age
65 even though the policy may be renewed after you attain age 65. No further
premiums for it will be due.

PLASP000028

335-RS            ROBERT H CHRISTENSEN 06-335-5003660            Page 11

COST OF LIVING ADJUSTMENTS WITH GUARANTEED PERCENTAGE INCREASE OPTION
(Applies to benefits payable after the 12th month of a period of disability)

## DEFINITIONS

CPI-U means the Consumer Price Index for All Urban Consumers. It is published by the United States Department of Labor. If the CPI-U is discontinued or if its method of computation is changed, we may use another nationally published index. We will choose an index which is similar in scope and purpose to the CPI-U. The CPI-U will then mean the index which is chosen.

Review Date means each anniversary date of the start of a period of disability.

Review Period means a one year period ending on a Review Date.

Index Month means the calendar month three months prior to a Review Date. But, the first Index Month means the calendar month three months prior to the start of a period of disability. We will measure all changes in the CPI-U from the first Index Month.

Benefit Factor is determined by dividing the CPI-U for the latest Index Month by the CPI-U for the first Index Month. We will compute it on each Review Date during a period of disability. It will apply to the Review Period that follows.

Monthly Benefit for Total Disability is shown on Page 3. (It can be increased by a "Social Insurance Substitute (SIS) Benefit" if it is included in your policy and when it is applicable).

Adjusted Monthly Benefit for Total Disability is the Monthly Benefit for Total Disability multiplied by the Benefit Factor for a Review Period. But, an Adjusted Monthly Benefit for Total Disability can not:

1. exceed the Monthly Benefit for Total Disability increased by a percentage factor equal to the completed number of Review Periods multiplied by the percentage shown on Page 3 as the Maximum COLA Percentage; or
2. be less than the amount of the Monthly Benefit for Total Disability increased by a percentage factor equal to the completed number of Review Periods multiplied by 4%.

## BENEFITS

If Injuries or Sickness results in a period of disability that lasts at least 12 months, we will compute Cost of Living Adjustments on each Review Date. Monthly benefits which thereafter accrue during that period of disability will be adjusted as follows:

1. On each Review Date, we will compute the Benefit Factor and the Adjusted Monthly Benefit for Total Disability for the Review Period that follows.

2. For any Monthly Benefit for Total Disability that accrues during a Review Period, we will pay instead the Adjusted Monthly Benefit for Total Disability.

PLASP00029

335-COLA/GPI-QR        ROBERT H CHRISTENSEN 06-335-5003660                Page 12

3.  We will adjust any Residual Disability Monthly Benefit which accrues during a Review Period.  To do this, we will use the Adjusted Monthly Benefit for Total Disability in the formula to determine each Residual Disability Monthly Benefit that is to be paid during that Review Period.  It will be used in the formula instead of the Monthly Benefit for Total Disability.

4.  Computations of Cost of Living Adjustments will end on the earliest of:

    a.  the end of the period of disability (see Page 4);
    b.  the end of a benefit period; or
    c.  the date you attain age 65.

If the computations end because of (a) or (b) above, benefit amounts will revert to those shown on Page 3.  Benefits payable for the first 12 months of a new period of disability will not include a Cost of Living Adjustment.  A new first Index Month and Review Date will apply to each new period of disability that lasts more than 12 months.

If the computations end because of (c) above and if any disability benefits continue to be payable after you attain age 65 for a period of disability that started before you became age 64, we will apply to those benefits the Benefit Factor that last applied before you became age 65.

We will compute a Benefit Factor on the first Review Date for a period of disability that starts between your 64th and 65th birthdays.  This factor will continue to apply to any benefits paid during that period of disability.

## QUALIFIED RIGHT TO INCREASE MONTHLY BENEFIT TO ADJUSTED AMOUNT

When you return to active and gainful full-time work after the end of a period of disability during which Cost of Living Adjustments were made, you may elect to increase the amount of the Monthly Benefit for Total Disability shown on Page 3.  You may increase it to the amount of the Adjusted Monthly Benefit for Total Disability (less any SIS Benefit if included) which was used to determine the last monthly claim payment, if:

1.  you have not reached your 60th birthday on the date you elect the increase; and
2.  within 90 days after the period of disability ends, you make application to us on a form which we will furnish you upon request.  On this form, you must confirm that you are actively and gainfully employed full time.  Other evidence of insurability will not be required.

The effective date of the increase will be the first of the month after we approve your application for the increase.  The required additional premium must be paid within 31 days of that date.  Later premiums for the increase must be paid as part of the renewal premiums for the policy.

The premium for the increase will be based on your attained age at the time of the increase.  It will also be based on our table of premium rates then in effect.

The increase in benefits will apply to new periods of disability which start after the effective date of the increase.

If you do not elect and obtain this increase, the Monthly Benefit for Total Disability will revert to the amount shown on Page 3 for new periods of disability.

PLASP000030

335-COLA/GPI-QR        ROBERT H CHRISTENSEN 06-335-5003660            Page 13

GUARANTEED PERCENTAGE INCREASE OPTION

### Definitions

**Option Date** means each anniversary of the Effective Date of the policy starting with the first and ending with the anniversary which falls on or next follows your 60th birthday.  If an Option Date does not coincide with a renewal date for this policy, it will change to coincide with the next renewal date thereafter.

**Option Period** means the period which begins 60 days before and ends 31 days after an Option Date.

### Exercising Increase Option

You have the right to increase the Maximum COLA Percentage shown on Page 3 by the Available Guaranteed Percentage Increase (Available GPI) also shown on Page 3.  You may do this, without submitting evidence of insurability, by following the rules set forth below.

An increase can be for the Available GPI or for part of it in increments of 2%.

The request for an increase must be made within an Option Period.  It must be a dated written request signed by you.  An increase will be effective:  (a) on the Option Date if your request is made before that date; or (b) on the date of your request if it is made within 31 days after the Option Date.

You can request an increase during any Option Period even if you are disabled, but the increase will apply only to a period of disability which starts after the effective date of the increase.  It must qualify as a separate period of disability (see Page 4).

The first premium for an increase must be paid within 31 days after the effective date of the increase.  Later premiums must be paid as part of the Policy Premium.  If the premium for the policy is being waived (see Waiver of Premium provision) on the effective date of the increase, you will not have to start paying the premium for the increase until the premium for your policy becomes payable again.

The premium for each increase of the Maximum COLA Percentage will be based on your attained age at the time of each increase.  It will also be based on:

1. our premium rates in effect at the time of the increase or on the Effective Date of the policy, whichever is less; and
2. your occupational class at the time of the increase or on the Effective Date of the policy, whichever will produce the lower premium.

When the Maximum COLA Percentage is increased, the premium for this GPI Option is reduced by the charge that was being made for the GPI percentage which was exercised. The reduced premium will be based on the Available GPI remaining, if any.

### Option Expiration Date

This GPI Option will expire, and no further premiums for it will be due, on the earlier of:  (a) the date when the full Available GPI has been exercised; or (b) the date when the Option Period ends for the age 60 Option Date described above.

NOTE:  The GPI portion of this benefit provision and its premium will cease as stated above.  The COLA portion continues until you attain age 65 when it and the premium for it will terminate, even though the policy may be renewed after you attain age 65.

PLASP00031

335-COLA/GPI-QR          ROBERT H CHRISTENSEN 06-335-5003660                    Page 14

PREMIUMS AND RENEWALS

**POLICY TERM**
The first term of this policy starts on the Effective Date shown on Page 3. It ends on the First Renewal Date also shown. Later terms will be the periods for which you pay renewal premiums when due. All terms will begin and end at 12:01 A.M., Standard Time, at your home. The renewal premium for each term will be due on the day the preceding term ends, subject to the grace period.

**GRACE PERIOD**
This policy has a 31 day grace period. This means that if a renewal premium is not paid on or before the date it is due, it may be paid during the next 31 days. During the grace period, the policy will stay in force.

**CONDITIONAL RIGHT TO RENEW AFTER AGE 65; PREMIUMS ARE NOT GUARANTEED**
(Continued from Page 1)
You can renew this policy as long as you are actively and gainfully working full time. From time to time, we can require proof that you are actively and gainfully working full time. If you stop working, (except by reason of Total Disability), this policy will terminate; except that coverage will continue to the end of any period for which premium has been accepted.

Premiums must be paid on time. They will be based on our table of rates by attained age in effect at time of renewals for persons in your same rate class who are insured under policies of this form. Other than your attained age, the factors used to determine your rate class will be the same as those that applied to you on the Effective Date of this policy.

The benefit provisions which will be included in this policy, if it is continued after you attain age 65, are described on Page 7.

**REINSTATEMENT**
If a renewal premium is not paid before the grace period ends, the policy will lapse. Later acceptance of the premium by us or by our agent authorized to accept payment without requiring an application for reinstatement will reinstate this policy.

If we or our agent require an application, you will be given a conditional receipt for the premium tendered. If the application is approved, the policy will be reinstated as of the approval date. Lacking such approval, the policy will be reinstated on the 45th day after the date of the conditional receipt unless we have previously written you of our disapproval.

The reinstated policy will cover only loss that results from Injuries which occur after the date of reinstatement or Sickness which is first manifested more than 10 days after such date. In all other respects, your rights and ours will remain the same, subject to any provisions noted on or attached to the reinstated policy.

PLASP00032

## SUSPENSION DURING MILITARY SERVICE

If you enter full-time active duty in the military (land, sea or air) service of any nation or international authority, you may suspend your policy. But, you may not suspend the policy during active duty for training lasting 3 months or less. The policy will not be in force while it is suspended, and you will not be required to pay premiums. Upon receipt of your written request to suspend the policy, we will refund the pro-rata portion of any premium paid for a period beyond the date we receive your request.

If your full-time active duty in military service ends before age 65, you may place this policy back in force without evidence of insurability. Your coverage will start again when:

1.  we have received your written request to place the policy back in force; and
2.  you have paid the required pro-rata premium for coverage until the next premium due date.

However, your request and premium payment must be received by us within 90 days after the date your active duty in the military service ends. Premiums will be at the same rate that they would have been had your policy remained in force. The policy will not cover any loss due to Injuries which occur or Sickness which is first manifested while the policy is suspended. In all other respects you and we will have the same rights under the policy as before it was suspended.

## PREMIUM ADJUSTMENT AT DEATH

Any premium paid for a period beyond the date of your death will be refunded to your estate.

CLAIMS

## NOTICE OF CLAIM

Written notice of claim must be given within 20 days after a covered loss starts or as soon as reasonably possible. The notice can be given to us at our home office, Chattanooga, Tennessee, or to our agent. Notice should include your name and the policy number.

## CLAIM FORMS

When we receive your notice of claim, we will send you claim forms for filing proof of loss. If these forms are not given to you within 15 days, you will meet the proof of loss requirements by giving us a written statement of the nature and extent of your loss. You must give us this proof within the time set forth in the Proof of Loss section.

## PROOF OF LOSS

If the policy provides for periodic payment for a continuing loss, you must give us written proof of loss within 90 days after the end of each period for which we are liable. For any other loss, written proof must be given within 90 days after such loss.

If it was not reasonably possible for you to give written proof in the time required, we will not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be furnished no later than one year after the 90 days unless you are legally unable to do so.

PLASP00033

**TIME OF PAYMENT OF CLAIMS**
After we receive written proof of loss, we will pay monthly all benefits then due you for disability. Benefits for any other loss covered by this policy will be paid as soon as we receive proper written proof.

**PAYMENT OF CLAIMS**
Benefits will be paid to you. Any benefits unpaid at death will be paid to your estate.

If benefits are payable to your estate, we can pay benefits up to $1000 to someone related to you by blood or marriage whom we consider to be entitled to the benefits. We will be discharged to the extent of any such payment made in good faith.

**PHYSICAL EXAMINATIONS**
We, at our expense, have the right to have you examined as often as is reasonable while a claim is pending.

**MISSTATEMENT OF AGE**
If your age has been misstated, the benefits will be those the premium paid would have bought at the correct age.

**LEGAL ACTIONS**
You may not start a legal action to recover on this policy within 60 days after you give us required proof of loss. You may not start such action after three years from the time proof of loss is required.

## GENERAL PROVISIONS

**ENTIRE CONTRACT**
This policy with the application and attached papers is the entire contract between you and us. No change in this policy will be effective until approved by one of our officers. This approval must be noted on or attached to this policy. No agent may change this policy or waive any of its provisions.

**INCONTESTABLE**

1.  After this policy has been in force for two years during your lifetime, we cannot contest the statements in the application.

2.  No claim for loss incurred or disability that starts after two years from the Effective Date of this policy will be reduced or denied on the ground that a sickness or physical condition not excluded by name or specific description had existed before the Effective Date of this policy.

**CONFORMITY WITH STATE STATUTES**
Any provision of this policy which, on its effective date, is in conflict with the laws of the state in which you reside on that date is changed to conform to the minimum requirements of those laws.

**ASSIGNMENT**
No assignment of interest in this policy will be binding on us until a copy is on file with us. We are not responsible for the validity of any assignment.

PLASP000034

## PREMIUM PAYMENT RIDER

In consideration of the Premium Payment Agreement between the Association and us, we agree to accept Policy Premiums as billed you.

The conditions of this rider are:

1.  The policy will not continue in force beyond the time for which the premium is paid, subject to the grace period.

2.  This rider will be void if:

    a.  your membership in the Association ends; or

    b.  the Premium Payment Agreement is terminated.

3.  If this rider is voided, premiums will be due and payable as required in the policy.

PLASP00035

1477-A-I          ROBERT H CHRISTENSEN 06-335-5003660          Page 18